STATE EX REL. WILLIAM E. HOWARD v. VILLAGE OF
ROSEVILLE.
GRANDVIEW PARK CIVIC ASSOCIATION AND OTHERS,
INTERVENERS.[1]

April 15, 1955.

No. 36,470.

[1]Reported in 70 N. W. (2d) 404.

*Loftsgaarden & Loftsgaarden,* for appellant.
*Thomas J. Nash* and *M. J. Timmons,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Mandamus to compel respondent, Village of Roseville, to issue to relator, William E. Howard, certain permits for the alteration, construction, and maintenance of a trailer park on his property within the Village of Roseville, Ramsey county. Relator's property is adjacent to and northwest of the intersection of state highway No. 36 and Victoria street north in the village. It extends approximately 1,280 feet from east to west on highway No. 36 and 165 feet from north to south along Victoria street.

On January 11, 1954, the district court of Ramsey county ordered judgment for a peremptory writ commanding respondent to issue the permits. It determined that an ordinance was arbitrary, unreasonable, and invalid insofar as it zoned relator's premises as farm residential property. On June 18, 1954, it denied respondent's motion for amended findings and conclusions or in the alternative for a new trial. This is an appeal from such order.

Respondent's refusal to issue the permits was based upon the restrictions prescribed in zoning ordinance 149 of the village (Village of Roseville Ordinance 149), which zoned the premises involved as farm residential property wherein trailer park usage was prohibited except to the extent maintained at the time of the adoption of the ordinance.

Prior to May 12, 1942, pursuant to L. 1941, c. 210,[2] the Ramsey County Planning Commission proposed a comprehensive plan for the zoning of various sections of Ramsey county, including Rose township, in which respondent village is now located. By virtue thereof, the property here involved was then classified as farm residential. On May 12, 1942, the township of Rose, pursuant to L. 1941, c. 210, § 5, accepted the plan of the commission and adopted a comprehensive zoning ordinance in which the property was likewise designated. L. 1941, c. 210, § 7, provided that after adoption of the plan of the commission by any town, city, or village, its provisions become binding upon all persons and property therein.

Both the plan of the commission and the township ordinance contained specific provisions which restrict the premises here to such usages as residential; general farming or gardening; commercial greenhouses and nurseries; stands for sale of agricultural products produced on the premises; stock raising and dairying; golf courses; and airports, cemeteries, and gun clubs. Such restrictions would forbid the use of the premises for trailer park purposes, except that the ordinance provided that (§ 11 of zoning plan passed by Rose Township) :

"* * * the lawful use of any land or building existing at the time of the adoption of this plan may be continued, although such use does not conform to the regulations specified by this plan * * *; provided, however, that no such non-conforming use * * * shall be enlarged or increased, nor * * * extended to occupy a greater area * * * than that occupied by such use at the time of the adoption of this plan; nor * * * moved to any other part of the * * * land

[2]Provisions of L. 1941, c. 210, now encompassed in M. S. A. 394.06 to 394.17.

upon which the same was conducted at the time of the adoption of this plan."

In May of 1948 the Village of Roseville came into existence, and on February 17, 1953, it adopted zoning ordinance 149, containing the same zoning provisions, definitions, restrictions, and exceptions as did the township ordinance.

Subsequent thereto on July 2, 1953, relator purchased the property involved here from William H. Cook, who since 1942 had operated a trailer park therein. Mr. Cook then occupied a house just northeast of the property on land approximately 100 feet by 200 feet in area which was not included in the sale to relator. He testified that, on May 12, 1942, at the time of the adoption of the ordinance by the township, he maintained approximately 18 to 20 trailers upon the property, none of which were located more than 400 to 500 feet west of its east line; that in 1945 he had increased this to a maximum of 41 trailers; but that thereafter the number had decreased so that in 1953 there were approximately 25 trailers maintained thereon. Under ordinances of the Village of Roseville a permit for each trailer is required, and the record indicates that from September 1952 through February 1953 only 17 of such trailer permits were applied for.

On July 14, 1953, after some preliminary conversation with the village clerk, relator applied to the village council for a permit for the construction of cesspools and septic tanks upon the property. On July 15, 1953, the village clerk issued the permit. He testified that he then thought the cesspools and septic tanks were to be installed close to the building occupied by Mr. Cook for residence purposes. Prior to the issuance of the permit, relator had commenced excavations on the property for installation of a sewer line. On July 16, 1953, the clerk discovered that relator's contractor was extending the sewer ditch 1,280 feet to the extreme westerly end of the property and intended to install a complete sewage system for an enlarged trailer park thereon. Thereupon, pursuant to direction of the village council, the permit was revoked and the work stopped.

Relator testified that his plans contemplated the expenditure of from $50,000 to $75,000 for improvements to the trailer park on

the premises, including fences, roadways, sidewalks, and sanitary facilities, all sufficient for the accommodation of 90 trailers.

■ We are asked to determine whether the trial court was correct in holding the ordinance arbitrary, unreasonable, and invalid as it applies to relator's property. Several well-established principles govern determination of the question. Under its police power, the governing body of a village or municipality, in the interests of public health, safety, morals, or general welfare, may restrict an owner's use of his property for commercial or annoying occupations deemed undesirable to the community as a whole. State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, affirmed, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832. The exercise of such power, of course, must bear a reasonable relationship to the subject toward which it is directed, whether it be public health, safety, morals, or general welfare. Nectow v. City of Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. ed. 842; State v. Modern Box Makers, Inc. 217 Minn. 41, 13 N. W. (2d) 731.

■ Insofar as zoning ordinances are concerned, it has frequently been held that what best furthers public welfare is a matter primarily for determination of the legislative body concerned (Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. [2d] 363; State ex rel. Beery v. Houghton, *supra;* Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. [2d] 634), and under this principle ordinances which designate residential districts and exclude trailer parks and like enterprises therefrom have often been upheld as valid exercises of the police power. *E.g.,* Fishman v. Tupps, 127 Colo. 463, 257 P. (2d) 579; Huff v. City of Des Moines, 244 Iowa 89, 56 N. W. (2d) 54; Midgarden v. City of Grand Forks (N. D.) 54 N. W. (2d) 659; see, Annotation, 22 A. L. R. (2d) 793.

■ Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions it imposes or the suitability for residential purposes of property so designated thereby, it is not the function of the courts to interfere with the legislative discretion on such issues.

This rule is well expressed in State v. Modern Box Makers, Inc., where it was stated (217 Minn. 47, 49, 13 N. W. [2d] 734, 735):

"* * * The general rule is that if reasonableness of an ordinance is debatable, courts will not interfere with the legislative discretion. * * *

\* \* \* \* \*

"* * * so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been selected arbitrarily, * * *."

See, also, American Wood Products Co. v. City of Minneapolis (D. Minn.) 21 F. (2d) 440, 444; Dennis v. Village of Tonka Bay (D. Minn.) 64 F. Supp. 214, affirmed (8 Cir.) 156 F. (2d) 672; Kiges v. City of St. Paul, *supra*.

■ Here, while relator testified that the land involved was such that its usage for residential purposes was precluded, respondent submitted the testimony of the village planning engineer to the effect that it was suitable for residential development and that many residences had already been constructed adjacent to it. The zoning plan of the village, showing the residential and other sections thereof, was received in evidence and showed relator's property as contiguous to other residential sections therein. A review of the entire record is convincing that strong evidence supported the legislative determination of the village council that relator's property should be classified as above described, and while of course there is a conflict with respect to this issue, under the authorities above referred to, the decision being legislative in character should not be subject to judicial interference.

■ Relator argues that he will sustain a financial loss because of the classification of his property as described because its value for residential purposes is less than it would be if used as a trailer park. It must be pointed out that, at the time he acquired the property, the ordinance was in effect, and he is presumed to have purchased it with full knowledge of the manner in which it was zoned by the ordinance. See, State v. Miller, 206 Minn. 345, 288 N. W. 713.

Further, he could have ascertained without difficulty that for some years prior to the date of purchase, his predecessor had not used the property for maintenance of more than approximately 20 trailers and that, under the nonconforming clause of the ordinance, this fact would limit his use of the property for trailer park purposes. The decrease in the property's value, if any, because of its being restricted to residential purposes was the result of the zoning ordinance and not because of respondent's refusal to issue a permit. It would follow that such decrease existed prior to relator's purchase of the property. He has not been denied the right to continue the trailer park use of the property to the same extent as such use was in effect prior to his purchase thereof. Respondent merely refuses to issue a permit authorizing him to increase or enlarge such usage to full coverage of the property or to install improvements thereon which would make such expansion permanent in nature to the detriment of other property within the zone.

■ That such an extension of use would be in violation of the ordinance seems clear. A not dissimilar situation was involved in Edmonds v. County of Los Angeles, 40 Cal. (2d) 642, 255 P. (2d) 772, where an owner increased the capacity of a trailer park notwithstanding a zoning ordinance provision limiting the use of the property for trailer park purposes to the same extent (twenty units) as it had been used at the time of the passage of the ordinance. There the court stated (40 Cal. [2d] 651, 255 P. [2d] 777):

"* * * a provision which exempts existing nonconforming uses is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. * * *

"The enlargement of plaintiffs' trailer court to accommodate 30 more trailers is clearly a different use of their property from that contemplated by the ordinance's allowance of the continuance of the *particular* existing use' for a prescribed period, especially in view of the fact that plaintiffs were required to make significant increase in the size of their so-called 'utility house' in order to provide

the additional sanitary facilities required by the Health and Safety Code."

■    Relator asserts that revocation of the permit, after he had made expenditures for improvements and incurred contractual liabilities in reliance thereon, constituted unlawful and arbitrary confiscation of his property. The principles governing the situation are well established. Generally, it is held that, where a permit has been issued by an authorized officer under a mistake of fact and contrary to zoning ordinances, it confers no privilege on the person to whom it is issued and even though the latter may have taken some action thereunder with the incurrence of expenses, it may, nevertheless, be revoked. As stated in Kiges v. City of St. Paul (240 Minn. 583, 62 N. W. [2d] 373) :

"* * * expenditures made and obligations incurred after the enactment of the * * * ordinance or amendment, *although in reliance on a permit previously issued, are insufficient to give a vested right to erect a building in violation of the ordinance.*" (Italics supplied.)

See, also, W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. (2d) 710; Adler v. Dept. of Parks & Public Property, 20 N. J. Super. 240, 89 A. (2d) 704; Marcus v. Village of Mamaroneck, 283 N. Y. 325, 28 N. E. (2d) 856; Vogt v. Port Vue Borough, 170 Pa. Super. 526, 85 A. (2d) 688; Annotation, 6 A. L. R. (2d) 960. Here the permit was issued under a mistake of fact and in direct violation of the ordinance. Upon discovery of this situation, the council acted promptly to revoke it the following day. Under the authorities cited, this action was within the power of the council.

Reversed and remanded with directions for such other and further proceedings as may be appropriate to determine the nature and extent respondent's property may be used for trailer camp purposes under the ordinance provision exempting existing non-conforming uses.