STATE, BY MILES LORD, ATTORNEY GENERAL, v. ALFRED J. LaBARRE AND OTHERS.

96 N. W. (2d) 642.

May 15, 1959—No. 37,425.

---

310

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *Hartley Nordin,* Special Assistant Attorney General, for appellant.

*Philip Eastwood,* for respondents LaBarre.

*Hamilton E. Cochrane* and *Lipschultz, Altman, Geraghty & Mulally,* for respondent Cut Price Super Markets.

THOMAS GALLAGHER, JUSTICE.

Proceedings for condemnation for trunk highway purposes of certain land located north of and adjacent to Highway No. 244 near its junction with Highway No. 100 in Washington County. The tract taken measures 17 feet in width and extends 364 feet in length. It is north of and adjacent to Highway No. 244. It is part of a larger tract northeast of this intersection upon which the owners, respondents Alfred J. LaBarre and Goldie E. LaBarre, have partially completed a shopping center.

Cut Price Super Markets, Inc., hereinafter referred to as Cut Price, is lessee of a completed supermarket forming a part of the shopping center. At the time of trial, there were 9 years, 11 months, and 25 days remaining under the terms of the lease. It grants lessee, together with other tenants of the shopping center, the right to use the tract taken as parking space for automobiles of customers. It provides that lessors furnish heat, water, snow removal, and certain repairs. The annual rental due thereunder is fixed at $16,000. It includes an option granted to the lessee to renew the lease upon its expiration for an additional 10 years on the same terms. It contains the following provision:

"24. If the demised premises or any part thereof shall be taken for any state or other public use or shall during the continuance of this lease be destroyed by the action of the public authorities, tenant may, at its option, within thirty (30) days after written notice from lessor of such taking or destruction, cancel and terminate this lease upon written notice to lessor or may elect to retain the balance of the demised premises, and the rent shall be proportionately reduced."

The petition for condemnation was first heard December 10, 1956, by commissioners appointed pursuant to M. S. A. 117.07. Their report, filed April 5, 1957, made a gross award of $20,000 which covered both the interests of the owners and of the lessee in the tract taken. It was apportioned by the commissioners—$17,000 to the fee owners and $3,000 to the lessee. Separate appeals to the district court were taken therefrom by the owners and the lessee.

In the district court proceedings, special interrogatories for the purpose of apportioning damages were submitted to the jury along with instructions as to the general award it might return. In connection

therewith, the trial court instructed the jury as follows:

"The landowners or the tenant, or each of them, are entitled to damages in this case. The only question for you to determine is: What sum of money will justify and fairly compensate the person so entitled for the damages they have sustained?

"Now, you will take with you to the jury room one form of verdict; and that verdict, omitting the title to the action, will read as follows:

" 'We, the jury in the above-entitled action, find for the respondents as to Parcel 36 and assess their damages in the sum of .........  dollars.'

"Now, that is the portion of the verdict in which you will insert the gross award which you have determined to be the damages which have resulted from the taking of this property by the state.

"After having answered or determined the total damages or the gross damages to be assessed as above indicated, you will then answer the following questions, numbered 1 and 2, each question being in two parts:

" '1-a. What amount of the total damages so assessed represents damages sustained to the leasehold interest of Cut Price Super Market?' * * *

" '1-b. What amount of the total damages so assessed represents damages sustained to the fee and reversionary interests of Alfred J. and Goldie E. LaBarre?' * * *

"The aggregate and total amount of 1-a and 1-b should be equal, of course, to the gross award which you have inserted in the first part of your verdict.

" '2-a. What was the fair annual rental before the taking by the state of the leasehold interest of Cut Price Super Market for the unexpired term of the lease?' There is an answer space following that question and a place for the insertion of the fair annual rental before the taking by the state as determined by you of the leasehold interest of Cut Price Super Market for the unexpired term.

" '2-b. What was the fair annual rental after the taking by the state of the leasehold interest of Cut Price Super Market for the unexpired term of the lease?' There is a place for your answer with a dollar sign in front of a blank space for the insertion of the fair annual rental which

you shall determine to be the fair annual rental for the taking—or after the taking of the leasehold interest of Cut Price Super Market for the unexpired term.

\* \* \* \* \*

"\* \* \* bearing in mind that the actual annual rental under the lease is $16,000.00, it will be for you to say whether or not the fair annual rental before the taking by the state of the leasehold interest for the unexpired term was greater on April 5, 1957, than what Cut Price is actually paying; and if so, you would insert the amount which you feel represents the fair annual rental. In any event, whatever you determine, as to question 2-a, would be the fair annual rental, before the taking by the state, of the leasehold interest, will be inserted by you in answer to question 2-a. At all events, whatever you feel to be the fair annual rental, in answer to question 2-b, after the taking by the state of the leasehold interest for the unexpired term, you will insert that amount. The difference between your figures will be of importance to the Court in arriving at and determining certain provisions of the lease."

The jury returned verdicts as follows:

"We, the jury \* \* \* find \* \* \* and assess \* \* \* damages in the sum of twenty thousand $20,000.00 Dollars.

"After having determined the total damages \* \* \* you will then answer the following questions \* \* \*:

"1-a What amount of the total damages so assessed represents damages sustained to the leasehold interest of Cut Price Super Market?

"Answer: $8,000.00

"1-b What amount of the total damages so assessed represents damages sustained to the fee and reversionary interests of Alfred J. and Goldie E. LaBarre?

"Answer: $12,000.00

"2-a What was the fair annual rental before the taking by the State of the leasehold interest of Cut Price Super Market for the unexpired term of the lease?

"Answer: $16,000.00

"2-b What was the fair annual rental after the taking by the State of the leasehold interest of Cut Price Super Market for the unexpired

term of the lease?

"Answer: $16,000.00"

Petitioner subsequently moved for judgment for the owners not exceeding $12,000 notwithstanding the verdict, or, in the alternative, for a new trial upon the grounds which are also urged in this appeal that (1) the award of $8,000 damages to Cut Price for that part of its leasehold taken is inconsistent with the jury's answer to the special interrogatories; (2) that the court erred in receiving certain evidence as hereinafter set forth; and (3) that under section 24 of the lease as above set forth lessee's rights are limited to cancellation of the lease or continuation therein at a proportionate reduced rental. The motion was denied and petitioner appealed.

■   The instructions given and the procedure followed with reference thereto appear authorized under Rule 49.02 of Rules of Civil Procedure, which is entitled "General Verdict Accompanied by Answer to Interrogatories" and which provides:

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. * * * When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other, but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment, but may return the jury for further consideration of its answers and verdict, or may order a new trial."

In Wright, Minnesota Rules, pp. 279, 282, the author, in commenting upon the distinction between special verdicts as covered by Rule 49.01 and special interrogatories as covered by Rule 49.02, sets forth:

"* * * A *special verdict* is a special written finding upon each issue of ultimate fact. * * *

"* * * The whole theory of the special verdict is that the jury will find the facts and the court will then apply the law to the facts so found. * * *

\* \* \* \* \*

"* * * The purpose of *special interrogatories* is to center the attention of the jury on the important issues that must be passed upon in reaching a general verdict. This device also gives the jury a means of checking the soundness of its general verdict.

\* \* \* \* \*

"The Rule spells out in detail what must be done where the answers and the general verdict are inconsistent. *Where the answers are consistent with each other but inconsistent with the general verdict, the court should normally point out the inconsistencies to the jury and send them back for further deliberation. If the court wishes, however, it may instead either direct entry of judgment in accord with the answers to the interrogatories, or order a new trial. Where the answers to the interrogatories are inconsistent with each other, the court may not enter judgment, but is required either to send the jury back for further deliberation or to order a new trial.*" (Italics supplied.)

See, Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. (2d) 673; Id. 245 Minn. 581, 72 N. W. (2d) 74, certiorari denied, 350 U. S. 874, 76 S. Ct. 119, 100 L. ed. 773; Awde v. Cole, 99 Minn. 357, 109 N. W. 812; Wayne v. New York Life Ins. Co. (8 Cir.) 132 F. (2d) 28.

■ The application of these principles here seems to compel a reversal of the order appealed from and the granting of a new trial. The general verdict called for total damages collectively sustained by the lessor and lessee in the sum of $20,000. The jury then determined that the lessee was entitled to $8,000 of such general damages for that part of his leasehold taken, but in its answer to the special interrogatories at the same time it determined that the lessee had in fact sustained no damage whatsoever. Obviously, if the rental value of his lease before the taking was $16,000 and that amount represented the value after the taking, the lessee would have sustained no damages. If the jury's answer to special interrogatory 2 is taken at its face value, it would follow that the full $20,000 award should have been for the benefit

of the feeholders, but in the answer to interrogatory 1-b, the jury determined that the damage to the feeholders was $12,000. These inconsistencies are irreconcilable and render the verdict perverse and inconsistent. Ayer v. Chicago, M. St. P. & P. R. Co. 187 Minn. 169, 244 N. W. 681. Accordingly, under Rule 49.02, a new trial must be granted.

■ The state contends that the trial court erred in receiving in evidence expert testimony as to valuations which admittedly were based upon improvements to the premises then in contemplation but not actually completed at the time of the trial; and in receiving in evidence on the issue of valuation exhibits indicating the increase in lessee's gross sales during its occupancy of the premises. In giving testimony as to valuations based upon contemplated improvements, the witness deducted, from the valuation arrived at, the cost of completing the project. At the time the work was in progress. Plans for the completion of the shopping center had been submitted and accepted by the owner and some contracts had been awarded for the construction work involved. It was possible to determine with a degree of accuracy what the cost of completion would be. This, as indicated, was deducted from the expert's estimate of the valuation of the shopping center as a completed and going concern. In our opinion we find no error or abuse of discretion in this procedure. As this court stated in King v. Minneapolis Union Ry. Co. 32 Minn. 224, 225, 20 N. W. 135, 136:

"We think it may be stated as elementary that a person is entitled to the fair value of his property for any use to which it is adapted * * * whether that use be the one to which it is presently applied, or some other to which it is adapted. It is, we think, equally true that any evidence is competent and any fact is proper to be considered which legitimately bears upon the question of the marketable value of the property. * * * The owner has a right to its value for the use for which it would bring the most in the market. * * * And it is not unreasonable to suppose that a purchaser would give more for it than he would if the business * * * had never been established * * *."

■ Evidence was received which indicated that gross sales of lessee's supermarket were steadily increasing. No attempt was made to show whether such increase resulted in a greater or a lesser net income to

the lessee. We do not think that the failure to submit such evidence rendered the evidence relative to increased sales irrelevant or improper. The general sales increase was evidence that the leased premises were becoming more valuable as the district developed and the market potential increased. That such factors would have a bearing on the value of the lease can scarcely be questioned. Regents of University of Minnesota v. Irwin, 239 Minn. 42, 57 N. W. (2d) 625.

■ We do not feel that section 24 of the lease, as above set forth, which granted lessee the option of terminating the lease or continuing it at a reduced rental in the event any part of the demised premises were taken for public use, constituted a bar to lessee's claims. There is nothing therein which could be construed as compelling lessee to accept one of such options in so far as lessee's rights against the state for damages for the taking are concerned. Undoubtedly lessee had invested substantial sums in advertising, promotional development, fixture installations, and like matters, and to say that because of the provision referred to the lessee could not establish a valid claim against the state for taking part of the leasehold premises would be to give to the language of this section a construction which certainly is not conveyed by its terms.

The order appealed from is reversed and a new trial granted.