NAEGELE OUTDOOR ADVERTISING COMPANY OF MINNESOTA, INC. v. VILLAGE OF MINNETONKA AND ANOTHER.

162 N. W. (2d) 206.

October 11, 1968—No. 40,781.

*Montreville J. Brown, David C. Donnelly, Edward N. Denn,* and *Oppenheimer, Hodgson, Brown, Wolff & Leach,* for appellant.

*Carl F. Dever, Charles J. Hauenstein,* and *Dorsey, Marquart, Windhorst, West & Halladay,* for respondents.

*Louis W. Claeson, Jr.,* for the League of Minnesota Municipalities, amicus curiae.

ROGOSHESKE, JUSTICE.

On May 8, 1961, the village of Minnetonka, as a part of a comprehensive municipal plan, enacted a zoning ordinance which prohibited billboards and signs erected for advertising purposes within areas zoned exclusively for residential use. A provision of the ordinance required that all nonconforming billboards be removed within 3 years after its effective date.

On February 6, 1964, plaintiff, Naegele Outdoor Advertising Company of Minnesota, Inc., received a letter from the chief building inspector of the village notifying it that 14 of its billboards were nonconforming and would have to be removed by May 8, 1964. On the same day, General Outdoor Advertising Company, whose assets plaintiff had previously purchased, received a similar letter with regard to eight of its billboards.

On April 30, 1965, plaintiff commenced this declaratory judgment action against the village of Minnetonka and its chief building inspector, seeking to have this ordinance declared unconstitutional and requesting a permanent injunction against its enforcement. The village counterclaimed,

seeking an order directing plaintiff to remove 18 specified billboards which had become nonconforming under the ordinance. The court temporarily restrained the village from enforcing the ordinance and from prosecuting plaintiff for its alleged failure to comply pending the outcome of the action, the trial of which began on January 12, 1966.

The trial court found that the ordinance is not by its terms unconstitutional but that it had been discriminatorily enforced against plaintiff, denying it due process and equal protection of the law. Enforcement of the ordinance against plaintiff was enjoined until such time as the village uniformly enforced it against all violators.

Plaintiff appeals from the judgment entered, assigning as error the trial court's conclusion that the ordinance is not unconstitutional by its terms.

Two issues are raised: (1) Whether a municipality has the power to prohibit by zoning ordinance the use of land in residential districts for billboard advertising; and (2) if so, whether the removal of previously constructed billboards can be required within a period of 3 years from the date they became nonconforming uses.

Plaintiff primarily contends that the ordinance is unreasonable and arbitrary in that it is based solely on aesthetic considerations which are not reasonably related to the public health, safety, morals, or general welfare, and that it is therefore unconstitutional on its face.

In Kiges v. City of St. Paul, 240 Minn. 522, 530, 62 N. W. (2d) 363, 369, we declared that ordinances enacted pursuant to the police power in this state "cannot be successfully attacked on constitutional grounds unless there is affirmative proof that the restriction is clearly arbitrary, discriminatory, and unreasonable and without any substantial relation to public health, safety, morals, or general welfare." While a decision of a legislative body on what promotes the public health, safety, morals, and general welfare is not conclusive, it is entitled to great weight. As we said in State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 347, 70 N. W. (2d) 404, 407:

"Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions

it imposes * * *, it is not the function of the courts to interfere with the legislative discretion on such issues." [1]

The trial court found, and the village concedes, that the billboards in question have no detrimental effect on public health or morals. The trial court also found, apparently on the basis of the uncontradicted and unchallenged testimony of an expert witness testifying on behalf of plaintiff, that these billboards "do not constitute a safety or traffic hazard along any of the streets or highways" of the village.[2] Thus, in this case, the issue of constitutionality must turn on whether plaintiff has established that the village council was arbitrary and unreasonable in its legislative determination that the exclusion of billboards from residential districts promotes the general welfare.

The ordinance in question is part of a comprehensive zoning plan designed, among other things, to exclude all commercial enterprises from residential areas. In the early years of the development of zoning law, courts were extremely reluctant to accept the judgment of legislative bodies that a nonconforming but essentially inoffensive commercial structure, such as a neighborhood store, endangered the health, safety, morals, or general welfare of a residential area. State ex rel. Lachtman v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050. Essentially, the only zoning ordinances upheld were those designed to eliminate nuisances. In several cases ordinances excluding billboards from residential neighborhoods were sustained on the ground that billboards are a nui-

---

[1] Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789; State v. Modern Box Makers, Inc. 217 Minn. 41, 13 N. W. (2d) 731.

[2] The court, however, found that the "Village is a suburb of the City of Minneapolis, Minnesota. It is presently primarily a residential area. Because of its proximity to the City of Minneapolis and to lakes and other residential areas and for the further reason that its topography consists generally of rolling, wooded hills, its further development and growth, including the areas adjacent to the highways, points toward residential development almost exclusively. The maintenance of billboards and signs in an otherwise potential residential development area, causes it to be far less desirable for home sites. It retards construction of and prevents an increase in the population and the assessed valuation of the Village."

sance. Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. ed. 472; St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269, 39 S. Ct. 274, 63 L. ed. 599. In this case, however, the trial court found, and the village concedes, that plaintiff's billboards are not a nuisance in the common-law sense.

Thwarted in their attempts to use the police power, municipalities attempted to develop restricted residential areas by use of the power of eminent domain. After first holding that the power of eminent domain was not applicable to residential zoning since no "public use" was involved, this court reversed itself and upheld such a condemnation ordinance. State ex rel. Twin City Bldg. & Investment Co. v. Houghton, 144 Minn. 1, 13, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585.

Residential zoning by use of the police power alone was finally upheld in the landmark case, State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, affirmed, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 833, in which this court specifically reversed its prior contrary opinions. In that case the city of Minneapolis had by ordinance excluded multiple-family dwellings from residential districts. The court stated (164 Minn. 150, 204 N. W. 570):

"* * * The police power, in its nature indefinable, and quickly responsive, in the interest of common welfare, to changing conditions, authorizes various restrictions upon the use of private property as social and economic changes come. A restriction, which years ago would have been intolerable, and would have been thought an unconstitutional restriction of the owner's use of his property, is accepted now without a thought that it invades a private right. As social relations become more complex restrictions on individual rights become more common. With the crowding of population in the cities there is an active insistence upon the establishment of residential districts from which annoying occupations and buildings undesirable to the community are excluded."

Exclusively residential zoning has been held consistently since that time to be a valid exercise of the police power.[3]

---

[3] See, e. g., State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. (2d) 404; State v. Modern Box Makers, Inc. *supra*.

In Euclid v. Ambler Co. 272 U. S. 365, 388, 47 S. Ct. 114, 118, 71 L. ed. 303, 311, the United States Supreme Court, in upholding a zoning ordinance enacted under the police power which excluded commercial and industrial uses, including billboards, from residential zones whether they were inherently inoffensive or not, said:

"Here * * * the exclusion is in general terms of all industrial establishments, and it may thereby happen that not only offensive or dangerous industries will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect of many practice-forbidding laws which this Court has upheld although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. [Citations omitted.] The inclusion of a reasonable margin to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class. It cannot be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' "

A number of jurisdictions have specifically held that the exclusion of billboards from residential districts is a legitimate exercise of the police power. See, e. g., United Advertising Corp. v. Metuchen, 42 N. J. 1, 198 A. (2d) 447; Grant v. Mayor and City Council of Baltimore, 212 Md. 301, 129 A. (2d) 363. In the latter case the Maryland court said (212 Md. 316, 129 A. [2d] 370):

"* * * It does not follow that because billboards are not prima facie objectionable in commercial and industrial districts—although there they may be found as a fact to be objectionable—that the people acting through their legislative representatives, may not find them to so seriously incommode the health, comfort and general welfare of the dwellers in resi-

dential zones that the benefit to the public, brought about by their removal, substantially outweighs the resulting harm to individuals. If it does not clearly appear that this legislative finding was unreasonable and arbitrary—almost demonstrably wrong from the record—the courts may not disturb it."

Thus, today it is generally held that municipalities by use of their police power may constitutionally exclude all commercial uses, including billboards, from residential districts.

Plaintiff, however, relying upon dicta in several recent Minnesota cases which reiterate an old rule,[4] argues that a zoning ordinance based primarily on aesthetic considerations cannot reasonably be said to promote the general welfare. Since the council's conclusion that the ordinance promotes the general welfare is admittedly the only constitutional basis for enacting it, plaintiff argues that it is unconstitutional.

The rule that zoning for solely aesthetic reasons is invalid has been explained on the ground that aesthetic considerations are luxuries and the police power is exercisable only in cases of public necessity. Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 78 N. W. (2d) 843, 58 A. L. R. (2d) 1304. We have held, however, that the police power may be exercised to promote the "public convenience and general prosperity or welfare of the people." Western States Utilities Co. v. City of Waseca, 242 Minn. 302, 310, 65 N. W. (2d) 255, 262. Hence, a zoning regulation need not be a necessity but need only be substantially related to promoting the general welfare of the community to meet the constitutional requirement of reasonableness.

The other primary objection to aesthetic zoning is founded upon its subjective nature, for what may be attractive to one man may be an abomination to another. See, Forbes v. Hubbard, 348 Ill. 166, 180 N. E. 767. Therefore, many courts have long been unwilling to act as super art critics by ruling on the reasonableness of ordinances which are essentially based on subjective aesthetic considerations, and they have held all such ordinances invalid. See, e. g., Trust Co. of Chicago v. City of Chicago,

---

[4] See, Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659; Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734.

408 Ill. 91, 96 N. E. (2d) 499; Stoner McCray System v. City of Des Moines, *supra;* Hitchman v. Township of Oakland, 329 Mich. 331, 45 N. W. (2d) 306. In recent years, however, a growing number of courts, recognizing the role which planning and zoning play in municipal efforts to guide future development of land so as to insure a pleasanter and more economical environment in which its residents may live and work, have begun to uphold zoning based exclusively on aesthetics on the ground that the pleasant appearance of a district or community has a direct and beneficial effect on property values and on the well-being of its residents, and thus inevitably promotes the general welfare. State v. Diamond Motors, Inc. (Hawaii) 429 P. (2d) 825; Matter of Cromwell v. Ferrier, 19 N. Y. (2d) 263, 279 N. Y. S. (2d) 22, 225 N. E. (2d) 749; Oregon City v. Hartke, 240 Ore. 35, 400 P. (2d) 255.

Whichever of these views is accepted, however, the test governing our decision on the constitutional issue presented is whether the village council in exercising its legislative prerogative acted reasonably, with the question of reasonableness to be resolved by deciding whether its determination upon a consideration of the facts was based on reason and logic and not on whim or caprice, and that it promotes a legitimate police-power objective. The mere fact that the adoption of a zoning ordinance reflects a desire to achieve aesthetic ends should not invalidate an otherwise valid ordinance. Thus, if the challenged restriction is reasonably related to promoting the general welfare of the community or any other legitimate police-power objective, the fact that aesthetic considerations were a significant factor in motivating its adoption cannot justify holding it unconstitutional. Oscar P. Gustafson Co. v. City of Minneapolis, 231 Minn. 271, 42 N. W. (2d) 809; State ex rel. Beery v. Houghton, *supra.*

In this case, as part of a comprehensive land-use plan, the village decided to exclude all commercial uses from residential districts. Surely no one could dispute that billboards are a commercial use of land incompatible with achieving the objective of having, as nearly as possible, an exclusively residential area. There is clear evidence in the record that exclusively residential zoning enhances property values, ultimately increasing the tax base of the village. Numerous courts, including this one, have repeatedly sustained the exclusion of commercial enterprises, no

matter how seemingly inoffensive, from residential districts as a valid exercise of the police power. Obviously, aesthetics play a significant part in residential zoning. But such considerations of taste and beauty more likely reflect a community-wide opinion of what is necessary to advance and stabilize neighborhood values rather than the purely subjective opinions of members of the council. Thus, while aesthetics admittedly were a significant factor in the council's decision, they were not the sole basis. As the trial court found upon ample evidence, its purpose was to advance the general welfare.[5]

We therefore hold that, even though plaintiff's billboards do not threaten the public health, safety, or morals, it cannot be said that the village council's decision that all commercial uses including billboards should be excluded from residential districts is arbitrary, unreasonable, and not substantially related to the general welfare of the community.

The ordinance, however, goes one step beyond merely forbidding the establishment of nonconforming uses in the future. It provides that all nonconforming billboards, such as plaintiff's, must be removed within 3 years after the effective date of the ordinance. In essence, plaintiff challenges this aspect of the ordinance on the ground that it deprives it of its property without just compensation.

Traditionally it has been held that, while an exclusively residential zoning ordinance enacted under the police power may constitutionally prohibit the creation of new nonconforming uses, existing nonconforming uses either must be permitted to remain or must be eliminated by use of the power of eminent domain. See, Hawkins v. Talbot, 248 Minn. 549, 80 N. W. (2d) 863. This rule, however, does not require that preexisting nonconforming uses be permitted to expand or be rebuilt upon destruction, and accordingly many ordinances expressly prohibit expansion or reconstruction of nonconforming uses. It was thus hoped that nonconforming uses would soon vanish due to destruction, exhaustion, or obsolescence. This, however, has not happened. These nonconforming uses have often enjoyed an unchallenged monopoly in the residential areas because of the zoning ordinances, and with reasonable maintenance, they have prospered instead of withering away.

---

[5] See footnote 2, *supra.*

In recent years a number of municipalities have sought to eliminate preexisting nonconforming uses by means of so-called amortization provisions, of which the Minnetonka provision is a prime example. The theory behind this legislative device is that the useful life of the nonconforming use corresponds roughly to the amortization period, so that the owner is not deprived of his property until the end of its useful life. In addition, the monopoly position granted during the amortization period theoretically provides the owner with compensation for the loss of some property interest, since the period specified rarely corresponds precisely to the useful life of any particular structure constituting the nonconforming use.

Plaintiff cannot successfully challenge this ordinance as unconstitutional on its face unless it would be unconstitutional as applied to the property interests of every billboard owner. The underlying issue in making this determination must therefore be whether the amortization period provided by the statute is reasonable. If the value of plaintiff's property interest was extinguished before the running of the 3-year period, there would be no taking, or if the value of freedom from new competition for the statutory period equalled the value of the property interest remaining at the end of the period, there would be just compensation for the taking. In either case, the length of the amortization period is reasonable and the ordinance therefore is constitutional. Moreover, since several conceivable applications of the ordinance are reasonable, it is not unconstitutional by its terms. The question then becomes one of the unconstitutional application of the ordinance in a given case, and the burden is on plaintiff to establish that the ordinance, as applied, is unconstitutional. Plaintiff, however, has based its challenge on the argument that the ordinance is unconstitutional on its face and has introduced little or no evidence that the 3-year amortization period is unreasonable as applied.

In order for its application against plaintiff to be held unconstitutional, there must have been a taking from plaintiff of some valuable property interest without the payment of just compensation. The billboards themselves have not been taken. Plaintiff, as a lessee, under its leases has every right to remove them. It is shown, however, that it will cost over

$44,000 to remove and relocate these billboards, which plaintiff is willing to undertake if the village will compensate it. When a leasehold is condemned, a lessee is not entitled to compensation for the cost of removing personal property which it has a right to remove upon expiration of the lease. State, by Lord, v. Pahl, 257 Minn. 177, 100 N. W. (2d) 724; Korengold v. City of Minneapolis, 254 Minn. 358, 95 N. W. (2d) 112. Unless the billboards have become a part of the realty so that title to them would pass to the lessor at the end of the lease—which the evidence here expressly negates—, the lessee is entitled to no compensation for the cost of their removal.

But plaintiff claims that it has a vested right to continue the conduct of a lawful business at these locations which amounts to a property right. While there is some support for the contention that such a compensable property right may exist (see, Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. [2d] 789), plaintiff has introduced absolutely no evidence as to the value, if any, of such a right. There is therefore no support for this claim.

Finally, plaintiff claims that it was deprived of its property interest in the leases themselves. If a property right is taken for a public use, compensation by payment of its fair market value is required. In the case of a taking of a leasehold interest, this amount "is the fair rental value of the premises less the amount of the rent for the remainder of the term." In re Assessment for Widening Third Street in St. Paul, 176 Minn. 389, 390, 223 N. W. 458.[6]

Ten of the leases in question are oral and amount to no more than month-to-month tenancies. The value of such a leasehold is limited to the rental value of the premises for 30 days less the rent payable for that period. Riebs v. Milwaukee County Park Comm. 252 Wis. 144, 31 N. W. (2d) 190. The other 8 leases are written and vary in length from 1 to 10 years. However, plaintiff has offered no evidence on the fair market value of any of these leases at the end of the statutory amortization period. Thus, it is impossible for us to say that there has been such

---

[6] See, Kafka v. Davidson, 135 Minn. 389, 160 N. W. 1021.

a taking of a valuable property interest from plaintiff as to render this application of the ordinance unconstitutional.

The Naegele leases contain provisions permitting the lessee to cancel the leases on written notice if the value of said location for advertising purposes shall be or become diminished, and the General Outdoor leases may be canceled if the continued use of the billboard is prohibited by any law or ordinance. If a lease by its terms automatically terminates upon condemnation of the land, the lessee is entitled to no compensation for the loss of his leasehold interest, since he agreed in advance to such a termination. Korengold v. City of Minneapolis, *supra*. The same is true if the lease is terminable upon condemnation at the option of the lessor. In re Improvement of Third Street, St. Paul, 178 Minn. 552, 228 N. W. 162. In this case, however, the sole power of termination is in the hands of the lessee. These clauses, if anything, make these leases more valuable and would not preclude plaintiff from receiving compensation if it had been established that a taking occurred. State, by Lord, v. LaBarre, 255 Minn. 309, 96 N. W. (2d) 642.

Since plaintiff's challenge is limited to the sole claim that the ordinance is unconstitutional on its face, and there is a lack of proof to support any claim of unconstitutional application, the trial court's decision must be affirmed.

Plaintiff, in passing, also argues that the village has no statutory power to enact this type of zoning requirement. While it is true that a village has no express statutory power to enact such a requirement, there are several statutes from which such power can reasonably be implied. Minn. St. 412.221, subd. 32, provides:

"The village council shall have power to provide for * * * the promotion of * * * convenience, and the general welfare by such ordinances not inconsistent with the constitution and laws of the United States or of this state as it shall deem expedient."

Since, as previously indicated, the cases interpreting this general grant of the police power have long and consistently held that an ordinance which excludes commercial uses from residential districts is reasonably re-

lated to the general welfare and is therefore constitutional, a village has the statutory power.

Moreover, the Municipal Planning Act of 1965 is specifically designed to give municipalities "the necessary powers and a uniform procedure for adequately conducting and implementing municipal planning." Minn. St. 462.351. Section 462.357, subd. 1, provides in part:

"For the purpose of promoting the * * * general welfare, a municipality may by ordinance regulate the location * * * [and] the uses of buildings and structures for trade, industry, residence, recreation, public activities, or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation, flood control or other purposes, and may establish standards and procedures regulating such uses. The regulations may divide the municipality into districts or zones of suitable numbers, shape and area."

The act, therefore, expressly gives municipalities the power to create residential districts as part of a comprehensive zoning plan. Thus, today no one can seriously contend that the creation of exclusively residential districts is beyond either the constitutional or statutory power of a municipality.

In order to make this power to create exclusively residential districts effective, municipalities must have the power to prohibit the construction of future nonconforming uses and to require the removal of old ones. The continued presence of preexisting nonconforming commercial uses within these residential districts may reasonably be found to vitiate the effectiveness of the entire comprehensive municipal plan. A district can never be *exclusively* residential until all nonconforming uses are eliminated. The legislature, in giving municipalities broad land-use-planning powers, could not have intended to render them ineffective by denying to municipalities the power to eliminate preexisting nonconforming uses. Thus, even though the enabling statutes do not expressly give municipalities the power to eliminate nonconforming uses, such a power is necessarily implied from the broad grant of power to establish and implement a comprehensive municipal plan.

The village of Minnetonka has determined that exclusively residential districts promote the general welfare of that community and has undertaken to create them. It has not only prohibited the construction of new commercial uses within these districts but has also required the removal of existing billboards after a 3-year amortization period. Such an ordinance is clearly within the powers given the village by the enabling statutes. Whether this ordinance has been constitutionally applied in any given case depends upon the facts of that case.

Affirmed.