J. ELMER HUFF et ux., appellants, v. CITY OF DES MOINES,
intervenor-defendant-appellee, JOHN A. KUEFNER et al.,
intervenors-appellees.

No. 48065.

(Reported in 56 N.W.2d 54)

DECEMBER 16, 1952.

Tolbert C. Moore and Bump & Bump, all of Des Moines, for appellants.

Frank Bianco, Doral L. Williams, John A. Blanchard, Harris M. Coggeshall, all of Des Moines, for intervenor-defendant-appellee.

Edwin J. Frisk, of Des Moines, for intervenors-appellees.

HAYS, J.—Plaintiffs were enjoined from operating and maintaining a trailer park at 710 East University Avenue in the City of Des Moines, Iowa, as being in violation of certain ordinances of said City. They have appealed, and on this appeal they raise three propositions—two legal, one factual.

First, it is asserted that the City has no authority to legislate upon the erection or operation of the trailer park. Second, conceding the authority, plaintiffs obtained vested rights under Ordinance No. 4724 prior to its amendment in December 1948 by Ordinance No. 5077. Third, section 39-7 of said Ordinance No.

5077 is void. A finding for appellants upon any of the above propositions, in the order above set forth, renders all subsequent ones moot so far as this appeal is concerned.

Briefly, as to the status and history of the ordinances involved—long prior to the time here in question the City of Des Moines had enacted a building code under which a permit was required for the erection, reconstruction and inspection of all kinds of buildings. Authority for such is found in what is now section 368.19, Code of 1950. Also prior to the time in question the City had enacted a comprehensive zoning ordinance, as authorized by what is now chapter 414, Code of 1950. In 1941 the City enacted Ordinance No. 4647, which, upon the adoption of the Municipal Code in 1942, became chapter 39 thereof. This ordinance regulated trailer parks and trailers within the corporate limits. It placed the enforcement thereof in the health department. Section 6 thereof stated: "No person shall operate, maintain or offer for public use ** * * a trailer park without first having obtained a permit therefor from the health department." Section 7 thereof required that a written application, in prescribed form, shall be made at least thirty days before the park is placed in operation. Section 11 thereof prescribed the required equipment and manner of maintenance. On December 6, 1948, the City, by Ordinance No. 5077, repealed chapter 39, supra, and enacted a new chapter 39 entitled "Trailers and Trailer Parks." This new chapter covers the same general ground as the old one but in a more comprehensive manner. It also contained a new provision, section 39-7, which is as follows:

"Location. Trailer parks may be located in commercial districts or any district in which multiple dwellings are permitted. Each boundary of the park when located in a multiple dwelling district must be at least two hundred (200) feet from any permanent residential building located outside the park *unless* separated therefrom by a natural or artificial barrier, *and unless* sixty (60) per cent of the property owners, according to the area within said two hundred (200) feet, consent in writing to the establishment of the park." (Italics ours.)

Briefly, as to appellants' situation: They own a tract of land known locally as 710 East University Avenue. It has a front-

age of 86 feet on the avenue, extending back (north) 272¼ feet, widening to 126 feet on the north 68.8 feet thereof. The south 122 feet is zoned as commercial. The north 150¼ feet is zoned for multiple dwellings. In August 1948 appellants consulted with various city officials relative to the erection of a trailer park upon the above stated site. In October 1948 they were issued a *building* permit authorizing the erection of a utility house, same to be located in the multiple dwelling area. The building was erected at a cost of $4600, and a certificate of occupancy was issued in January 1949. In September 1949 additional plumbing was installed at a cost of $1799.44, and in November 1950 more plumbing was installed at a cost of $700. A picket fence was built about the tract in 1951. The park has a capacity of seventeen trailers and is in operation. No written application for a permit to operate a trailer park was ever filed until in February 1949, and it did not contain the consent of sixty per cent of the adjacent property owners within the 200-foot area. This application together with two subsequent ones were refused. We think the record fairly shows that all of the above installations comply with the provisions of the building code.

As originally commenced this action was in mandamus to compel the issuance of a permit. The City of Des Moines and several owners of property adjacent to the tract in question intervened and asked that plaintiffs be enjoined from operating the park. On this issue the cause was tried with the result above-noted.

I. Appellants assert that the City of Des Moines is without authority to enact *any* ordinance regulating trailer parks. If this be correct then the trial court must be reversed.

█ It is the recognized rule in this state, and generally elsewhere except where home rule prevails, that a municipal corporation, being a creature of the legislature, can exercise only those powers specifically granted or such as are necessarily or fairly implied in or incident to those expressly granted, and such powers are to be strictly construed. Downey v. City of Sioux City, 208 Iowa 1273, 227 N.W. 125; City of Des Moines v. District Court, 241 Iowa 256, 41 N.W.2d 36.

█ Section 366.1, Code of 1950, authorizes enactment of such ordinances as may "seem necessary and proper to provide

for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." Section 368.1, Code of 1950, grants general powers "for the protection of their property and inhabitants, and the preservation of peace and good order therein." Chapter 414, Code of 1950, authorizes city zoning, and section 414.1 thereof provides that "for the purpose of promoting the health, safety, morals, or the general welfare of the community", cities and towns may regulate and restrict "the location and use of buildings, structures, and land for trade, industry, residence, or other purposes." Relative to what is now section 366.1, supra, we said in Cecil v. Toenjes, 210 Iowa 407, 410, 228 N.W. 874, 875: "Contained within that legislation are elements generally known as police power. Such power had its source in the state, and by the foregoing statute was delegated to the municipality." Relative to section 414.1, supra, we said in Boardman v. Davis, 231 Iowa 1227, 1229, 3 N.W.2d 608, 610, zoning is an "exercise of the police power, in the interest of public peace, order, morals, health, safety, comfort, convenience, and the general welfare." Police power is difficult to definitely define. In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1103, 184 N.W. 823, 826, 188 N.W. 921, 23 A. L. R. 1322, 1328, we said:

"We shall not undertake any comprehensive definition of the police power of the state. No such definition has yet been accomplished by any court, nor is it possible or desirable that it should be accomplished. With the changing conditions necessarily attendant upon the growth and density of population, and the ceaseless changes taking place in method and manner of carrying on the multiplying lines of human industry, the demand becomes greater upon that reserve element of sovereignty which we call the police power, for such reasonable supervision and regulation as the state may impose, to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others."

Webster (New International Dict., Second Ed.) defines police power as "the power of the state to protect the public

against the abuse of individual liberty, that is, to restrain the individual in the exercise of his rights when such exercise becomes a danger to the community."

Even conceding that the instant trailer park is erected and maintained in a manner noninjurious to the health, morals or general welfare of the public, as asserted by appellants, we think that judicial notice may be taken of the rapid growth of trailer parks through the country, and that, generally speaking, regulation and restriction thereof constitute a legitimate exercise of police power. We think such power is expressly granted to municipalities under the statutes above-cited. As stated in City of Des Moines v. Fowler, 218 Iowa 504, 510, 255 N.W. 880, 883: " 'If an ordinance be passed in virtue of express legislative power and substantially follows the powers granted, a court will sustain it regardless of its opinion as to its reasonableness.' " See also annotation 22 A. L. R.2d 781 and cases cited therein. There is no merit to appellants' contention.

II. Appellants further assert that under the old Ordinance No. 4647 they obtained a vested right to operate the trailer park which could not be taken from them by a later amendment thereto. This refers specifically to section 39-7 of the new ordinance and which requires the consent of certain adjacent property owners. This consent appellants do not have and probably could not obtain. Under the record we cannot agree.

At the time appellants first contemplated constructing a trailer park their attention was called to the existence of Ordinance No. 4647 and they were advised they could operate if they complied with the existing ordinance. As before stated, sections 6 and 7 thereof specifically required that a written application be filed and a permit obtained before such a park could be operated. No such application was filed until after the new ordinance was enacted and no permit has been granted. It is true that in October 1948 a permit was granted for the construction of a utility house, but such a permit was required under the general building code, irrespective of Ordinance No. 4647. The permit to operate under the ordinance is of an entirely different type.

The record shows that the day following the issuance of the *building* permit objections to such a park were filed with the

city council. Thereafter it was referred to the planning and zoning commission. A public hearing was had of which appellants had notice. On December 6, 1948, the new ordinance was enacted. Little, if any, expense had been incurred at the time of the hearing and the adoption of the new ordinance. Appellants now assert that they have invested some $12,000 in the park in reliance upon some conversation they had with officials of the City and therefore have vested rights, citing Crow v. Board of Adjustment, 227 Iowa 324, 288 N.W. 145. That case holds that a permit once issued may not be revoked after expense had been in good faith incurred thereunder. The permit there referred to was a building permit, such as appellants received in October 1948. No attempt has been made to revoke it and very little of appellants' expenditures were made under that permit. The case is not in point. Almost from the date of the building permit, October 13, 1948, and well prior to any change in the ordinance, appellants knew steps were being taken to restrict, if not prohibit, the construction of the park. In the face of this they deliberately went ahead with their project. We find no vested rights in appellants nor equitable circumstances which would warrant a court of equity in granting the relief asked, assuming that the new ordinance is valid.

█ III. This brings us to the final proposition, Is section 39-7 (Ordinance No. 5077) void? Appellants so contend, asserting it to be an illegal delegation of a governmental function to private individuals. Though repetition, we again set forth section 39-7:

"Location. Trailer parks may be located in commercial districts or any district in which multiple dwellings are permitted. Each boundary of the park when located in a multiple dwelling district must be at least two hundred (200) feet from any permanent residential building located outside the park unless separated therefrom by a natural or artificial barrier, and *unless sixty (60) per cent of the property owners, according to the area within said two hundred (200) feet, consent in writing to the establishment of the park.*" (Italics ours.)

While the authorities are not in full accord on legislation of this type, there appears to be two distinct types thereof. In

Downey v. City of Sioux City, supra, this court had before it an ordinance similar in type to the instant one. At pages 1279, 1280 of 208 Iowa, page 128 of 227 N.W., we said:

"Generally speaking, it has been held that regulations or ordinances requiring the consent of property owners * * * in the vicinity for the erection or use of particular kinds of buildings are invalid, on the ground that such is a delegation of governmental power to private citizens * * *. However, a distinction is to be kept in mind in matters of this kind between an ordinance which leaves the enactment of law to individuals, and an ordinance prohibitory in character. The prohibition may be modified with the consent of the persons most affected by such modification; hence an ordinance is not invalid by reason of a provision that buildings may be erected or used for particular purposes if the consent of a part or all of the property owners in the vicinity is obtained."

See also Cady v. City of Detroit, 289 Mich. 499, 286 N.W. 805; Northwood Properties Co. v. Perkins, 325 Mich. 419, 39 N.W.2d 25; Myers v. Fortunato, 12 Del. Ch. 374, 110 A. 847; Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A 136, Ann. Cas. 1917C 594; annotation 21 A. L. R.2d 553–556; 62 C. J. S., Municipal Corporations, section 227(9)b.

While the section in question is, at first reading, inclined to be rather confusing, we think it comes within the distinction pointed out in the Downey case, supra. We think it must be construed as permitting trailer parks in commercial zones without restriction except as to equipment, etc. It permits them in multiple building zones when located more than 200 feet from permanent residential buildings located outside the park area. By necessary inference it prohibits them within this 200-foot area. It then provides that this prohibition may be waived by those within the protected area (200 feet) if sixty per cent thereof consent thereto in writing. We have carefully examined the cases cited by appellants, such as State ex rel. Seattle Title Tr. Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, 86 A. L. R. 654, and Eubank v. City of Richmond, 226 U. S. 137, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A., N. S., 1123, and

find that they deal with a different type of ordinance and are not in point. We hold the ordinance in question to be valid and that appellants are not entitled to operate a trailer park on the tract in question which is zoned for multiple dwellings, in the absence of the required consent of sixty per cent of adjacent property owners.

 It appears that part of the trailer park is located upon an area which is commercially zoned. As to this area no consent of the adjacent property owners is required. If the park conforms to the other requirements of the ordinance as to equipment, etc., they are entitled to a permit to operate thereon. The record before us is too indefinite for a determination of this question. The decree appealed from enjoins the operation without regard to the different zoned areas. So far as it applies to the multiple building zone it is affirmed. As applicable to the commercial zoned area, it is remanded to the trial court for such further showing as appellants may care to make, relative to a compliance with chapter 39 of the Municipal Code, otherwise affirmed.—Affirmed in part and remanded in part.

All JUSTICES concur.