# IN THE SUPREME COURT OF IOWA

No. 118 / 04-1540

Filed December 22, 2006

**MARTIN J. BAHL, LINDA C. BAHL, and TERRENCE G. BAHL**,

      Appellants,

vs.

**THE CITY OF ASBURY, IOWA, and the CITY COUNCIL OF ASBURY, IOWA**,

      Appellees.

_____

Appeal from the Iowa District Court for Dubuque County, Alan L. Pearson, Judge.

Developers appeal adverse declaratory judgment holding Iowa law does not protect mobile home parks from discriminatory zoning. **AFFIRMED.**

Brian J. Kane and D. Flint Drake of Kane, Norby & Reddick, P.C., Dubuque, for appellants.

Stephen J. Juergens of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellees.

**STREIT, Justice.**

"A rose may still be a rose if called by another name but not so for manufactured housing."[1]  We are called on to determine whether a "mobile home" is a "manufactured home."  Developers claim the City of Asbury unlawfully discriminates against "mobile home" parks through zoning restrictions.  Developers contend Iowa law requires "mobile homes"—the kind with hitches, wheels, and/or axles—be treated the same as traditional homes built on site.  We find the statute in question, which prohibits cities from discriminating against "manufactured housing," only pertains to factory-built homes that sit on permanent foundations.  Because developers' proposal calls for "mobile homes," the city may treat it differently in comparison to other types of housing developments.  Accordingly, we affirm the district court's declaratory judgment.

## I.  Facts and Prior Proceedings

The Bahls own real estate in Asbury which is zoned A-1 for agricultural use.  Since 1997, the Bahls have repeatedly sought to have their land rezoned in a manner that would allow them to develop a community of prefabricated[2] homes to be called "Oak Meadows."  The Bahls' rezoning applications have been resisted by neighbors and Asbury's city counsel.

After the Bahls' second request for rezoning was denied in 1999, they filed suit alleging Asbury's zoning ordinance requiring "mobile

---

[1]A line from the ever-witty Chief Judge Alan Pearson's decision upholding Asbury's city zoning ordinance.  *Bahl v. City of Asbury*, No. CVCV053776, slip op. at 4 (D. Iowa Sept. 13, 2004).

[2]We use the term "prefabricated home" because the parties disagree on the meaning of "mobile home" and "manufactured home."

home" parks to be located only in R-4 (high density residential) districts violated Iowa Code section 414.28A (1999). Under section 414.28A, "[a] city shall not adopt or enforce zoning or subdivision regulations or other ordinances which disallow or make infeasible the plans and specifications of land-leased communities because the housing within the land-leased community will be manufactured housing."

The district court held Asbury violated section 414.28A because one reason for denying the Bahls' rezoning request was the fact the proposed development was a land-leased community of manufactured housing. On appeal, we affirmed. *See Bahl v. City of Asbury*, 656 N.W.2d 336 (Iowa 2002) ("*Bahl I*").

In *Bahl I*, we said "the plain language of section 414.28A . . . reveals a legislative intent to require equal treatment of land-leased communities that are composed of manufactured homes with similar communities composed of site-built housing." *Id.* at 345.

We interpreted Asbury's definition of "mobile home" in its zoning ordinance to include all types of prefabricated housing.[3] *Id.* at 337 n.1. In *Bahl I*, neither party disputed the Bahls' proposed development was a land-leased community of manufactured housing within the meaning of chapter 414. *Id.* Nor did the parties dispute the Bahls' project was subject to the restrictions imposed on "mobile home" parks by the City's zoning ordinance. *Id.* Notably, the Iowa legislature used the terms "manufactured housing" and "manufactured home" in chapter 414 of the

---

[3]In the current action, the district court noted "it appears that the Supreme Court [in *Bahl I*] misread the definition of 'mobile home' under the city zoning ordinance." However, we need not revisit that ordinance because this appeal concerns Asbury's revised ordinance, which clearly distinguishes between "mobile homes" and "manufactured homes."

Code while Asbury used the term "mobile home" in its zoning ordinance. Apparently, the parties were under the impression the terms could be used interchangeably.

After *Bahl I*, Asbury amended its zoning ordinance so the terms "mobile home" and "manufactured home" are now mutually exclusive. Under the current ordinance, a "manufactured home" means a "factory-built structure" on a "permanent foundation," which does not have a "permanent hitch" or any "wheels or axles" permanently attached to its frame. A "mobile home" is defined as all *other* factory-built structures—i.e. homes with permanent hitches, wheels and/or axles. Asbury also defined "land-leased community" in its ordinance. A "land-leased community" is any "tract of land under common ownership upon which 10 or more occupied manufactured homes are harbored . . . ."

The amendments to Asbury's zoning ordinance require manufactured homes be treated the same as site-built housing. Land-leased communities for manufactured housing are permitted under the same zoning requirements as for site-built communities. However, under Asbury's amended zoning ordinance, mobile home parks[4] are limited to planned unit developments[5] (PUD) in R-3 or R-4 zones. The effect of the City's changes is to treat mobile home parks differently than either site-built housing or manufactured housing as that term is used in Asbury's zoning ordinance.

---

[4]Asbury defines a "mobile home park" as a "tract of land upon which two (2) or more occupied mobile homes are harbored, either free of charge or for revenue purposes, whether or not site-built homes or manufactured homes are also in the same development site . . . ."

[5]A PUD is a district described as encouraging flexible and innovative design in the development of an appropriate site. PUDs are not typically subject to normal zoning restrictions. Instead, the project is negotiated between the developer and the city on a case-by-case basis.

Because the Bahls' development proposal includes mobile homes as defined by Asbury's current zoning ordinance, the Bahls filed a declaratory judgment action in the district court asking the court to find Asbury's current zoning ordinance violates Iowa Code section 414.28A (2003).[6] The district court found in favor of Asbury. It stated:

> Mobile homes as defined in the city's zoning ordinance are not protected by §§ 414.28 or 414.28A. Asbury defines mobile homes as structures the Iowa legislature has excluded from protection. Asbury's treatment of exempted structures does not offend §§ 414.28 or 414.28A.

The Bahls appeal.

## II. Standard of Review

The standard of review for a declaratory judgment action tried at law is for correction of errors. *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004) (citing *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 651 (Iowa 2002)).

## III. Merits

The issue before us is whether Asbury's treatment of "mobile home" parks under its current zoning ordinance violates section 414.28A. Section 414.28A provides:

> A city shall not adopt or enforce zoning or subdivision regulations or other ordinances which disallow or make infeasible the plans and specifications of land-leased communities because the housing within the land-leased community will be manufactured housing.
>
> "*Land-leased community*" means any site, lot, field, or tract of land under common ownership upon which ten or more occupied manufactured homes are harbored, either free of charge or for revenue purposes, and shall include any building, structure, or enclosure used or intended for use as part of the equipment of the land-leased community. . . . A manufactured home located in a land-leased community

---

[6]All further references to the Iowa Code are to the 2003 version.

shall be taxed under section 435.22 as if the manufactured home were located in a mobile home park.

Section 414.28A does not define "manufactured home" or "manufactured housing." Asbury contends the definition found in section 414.28 also applies to section 414.28A. Section 414.28 states:

> As used in this section, "*manufactured home*" means a factory-built structure, which is manufactured or constructed under the authority of 42 U.S.C. § 5403 and is to be used as a place for human habitation, *but which is not constructed or equipped with a permanent hitch or other device allowing it to be moved other than for the purpose of moving to a permanent site, and which does not have permanently attached to its body or frame any wheels or axles.*

(Second emphasis added.) In other words, according to Asbury, section 414.28A only protects foundation-ready prefabricated homes from discrimination and does not protect prefabricated homes with permanent hitches, axles and/or wheels. Using this interpretation of section 414.28A, Asbury contends its zoning ordinance satisfies section 414.28A because it requires foundation-ready prefabricated homes to be treated the same as traditional on-site built homes. Asbury argues section 414.28A does not prohibit the city from restricting the location of mobile home parks (i.e. two or more prefabricated homes with hitches, wheels and/or axles).

The Bahls claim Asbury's amended zoning ordinance "is a transparent attempt through word play to circumvent a banned form of discrimination . . . ." The Bahls make two arguments on appeal. First, they argue our decision in *Bahl I* established the "law of the case" and consequently the prefabricated homes with hitches, axles and/or wheels described in their rezoning application are "manufactured homes" for purposes of their continuing application. Second, the Bahls disagree

with Asbury's interpretation of section 414.28A. The Bahls contend "manufactured home" has a different meaning in section 414.28A than it does in section 414.28. According to the Bahls, section 414.28 protects foundation-ready prefabricated homes from discrimination while section 414.28A protects prefabricated homes with axles, hitches and/or wheels. The Bahls therefore conclude section 414.28A prevents Asbury from discriminating against its proposed development.

## A. Law of the Case

The Bahls contend the law of the case doctrine prevents Asbury from "argu[ing] that the type of homes proposed in the Bahls' application (mobile homes) are not 'manufactured homes' within the meaning of the City's ordinance or Chapter 414." They base this contention on the fact the parties in *Bahl I* did "not dispute that the development proposed by the Bahls is a land-leased community of manufactured housing within the meaning of chapter 414." *Bahl I*, 656 N.W.2d at 337 n.1.

Under the law of the case doctrine, "an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000) (citing *Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632 (Iowa 1991)). The doctrine is based on a public policy against reopening matters which have already been decided. *Id.* (citing *Wolfe v. Graether*, 389 N.W.2d 643, 651 (Iowa 1986)). Thus, issues decided by an appellate court generally cannot be reheard, reconsidered, or relitigated. *Id.* (citing 5 C.J.S. *Appeal and Error* § 975, at 476–77 (1993)). The appellate court decision is final as to all questions decided and the trial court is obligated to follow that decision. *Id.* (citing 5 C.J.S. *Appeal and Error* § 975, at 476–77).

The law of the case doctrine does not apply to the present case because we were not asked in *Bahl I* to determine the meaning of "manufactured home" as the term is used in section 414.28A. The doctrine applies "only to those questions that were properly before us for consideration and passed on" and "[a] question not passed on is not included" under the doctrine. *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d 522, 526 (Iowa 1968) (citations omitted). Thus, we now turn to section 414.28A and the meaning of "manufactured home."

### B.  Iowa Code Section 414.28A

Section 414.28A states "[a] city shall not adopt or enforce zoning or subdivision regulations or other ordinances which disallow or make infeasible the plans and specifications of land-leased communities because the housing within the land-leased community will be manufactured housing." A land-leased community is any property "under common ownership upon which ten or more occupied manufactured homes are harbored . . . ." Iowa Code § 414.28A. Section 414.28A does not include a definition of "manufactured homes." The definition, of course, is critical to our determination of the scope of the statute.

"The polestar of statutory interpretation is to give effect to the legislative intent of a statute." *State v. Schultz,* 604 N.W.2d 60, 62 (Iowa 1999) (citing *Harris v. Olson,* 558 N.W.2d 408, 410 (Iowa 1997)). "If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions and common usage." *Iowa Dep't of Transp. v. Soward,* 650 N.W.2d 569, 571 (Iowa 2002) (citing *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998)).

The Bahls argue "[i]n all previous proceedings, the City, the City's legal counsel, the courts, and the participants in the public hearings have used the terms 'mobile home' and 'manufactured home' interchangeably, indicating a general understanding that the mobile homes proposed by the Bahls were in fact 'manufactured homes' and protected by 414.28A." They also point to decisions from other jurisdictions finding the terms "mobile home" and "manufactured housing" are synonymous. *See, e.g., Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987) (noting in the late 1970's, the industry began using the term "manufactured home" instead of "mobile home"). But the cases the Bahls cite address restrictive covenants, not the statute at issue here. We are only concerned with how the Iowa legislature defines "manufactured home." In this particular case, we need not look beyond sections 414.28 and 414.28A because they offer enough clues to determine the legislature's intent.

Section 414.28A states "[a] manufactured home located in a land-leased community shall be taxed under section 435.22 *as if* the manufactured home were located in a mobile home park." (Emphasis added.) The words "as if" indicate the legislature understood the difference between the terms manufactured home and mobile home and did not intend "manufactured home" to include mobile homes.

Because of the reference to section 435.22, the Bahls invite us to consider the definitions found in chapter 435, which pertains to taxing of mobile homes and manufactured housing in parks and communities. We think the Bahls are reading too much into the reference to section 435.22. The statute reads "[a] manufactured home . . . shall be taxed under section 435.22 *as if* the manufactured home were located in a

mobile home park." Iowa Code § 414.28A (emphasis added). It does not say a manufactured home is defined in chapter 435.

We think it makes more sense to refer to a definition within the chapter at issue. *See State v. Hawk*, 616 N.W.2d 527, 529 (Iowa 2000) ("[C]ourts are obliged to consider a challenged statute in its entirety and *in pari materia* with other pertinent statutes."). Section 414.28, which protects manufactured homes located outside of a manufactured home community from discrimination, defines "manufactured home."[7] Section 414.28 states:

> As used in this section, "*manufactured home*" means a factory-built structure, which is manufactured or constructed under the authority of 42 U.S.C. § 5403 and is to be used as a place for human habitation, but which is not constructed or equipped with a permanent hitch or other device allowing it to be moved other than for the purpose of moving to a permanent site, and which does not have attached to its body or frame any wheels or axles.

Thus, the definition found in section 414.28 is limited to prefabricated homes intended to be placed on permanent foundations. There is no indication the legislature intended to expand the definition of "manufactured home" for purposes of section 414.28A.

---

[7]Under section 414.28,

> A city shall not adopt or enforce zoning regulations or other ordinances which disallow the plans and specifications of a proposed residential structure solely because the proposed structure is a manufactured home. However, a zoning ordinance or regulation shall require that a manufactured home be located and installed according to the same standards, including but not limited to, a permanent foundation system, set-back, and minimum square footage which would apply to a site-built, single family dwelling on the same lot, and shall require that the home is assessed and taxed as a site-built dwelling. . . . When units are located outside a manufactured home community or mobile home park, requirements may be imposed which ensure visual compatibility of the permanent foundation system with surrounding residential structures.

In *Bahl I*, we said "it is instructive in our search for the meaning of section 414.28A to consider what the legislature intended when it enacted section 414.28." *Bahl I*, 656 N.W.2d at 342. This is because sections 414.28A and 414.28 are "very similar." *Id.* at 341. We said:

> There appears to be very little difference between section 414.28 and section 414.28A with respect to the operative language. The primary distinction of course is that section 414.28 applies to "residential structure[s]" whereas section 414.28A governs "land-leased communities."

*Id.* at 342. Therefore, it is logical to use the definition of "manufactured home" found in section 414.28 to interpret section 414.28A. When we do, it is obvious the legislature only intended section 414.28A to protect foundation-ready prefabricated housing from discrimination.[8] Our decision in *Bahl I* supports this conclusion. There, we said:

> [T]he plain language of section 414.28A . . . reveals a legislative intent to require equal treatment of land-leased communities that are composed of manufactured homes with similar communities composed of site-built housing. *Our interpretation of section 414.28A does not mean the City must allow mobile home parks in all zoning districts.* Nor does it mean the City cannot regulate manufactured housing developments. The statute merely mandates that land-leased communities of manufactured housing be allowed in any district in which similar communities of site-built housing are allowed, under the same terms and conditions imposed on such developments containing traditional housing.

---

[8]In *Bahl I*, we said "the Asbury zoning ordinance contravenes section 414.28A by relegating '*mobile home parks*,' not all condominium-type communities, to R-4 zoning districts." *Bahl I*, 656 N.W.2d at 345 (emphasis added). We used the term "mobile home parks" only because that was the term Asbury used in its zoning ordinance in effect at the time of the previous litigation. According to Asbury, under its prior zoning ordinance manufactured homes (i.e. the foundation-ready kind) were included within its broad definition of "mobile homes." In contrast to the prior zoning ordinance, Asbury's current ordinance treats "mobile homes" and "manufactured homes" as mutually exclusive. We did not imply in *Bahl I* that prefabricated homes with hitches, wheels, and/or axles are protected under section 414.28A.

*Id.* at 345 (emphasis added). Thus, Asbury's zoning ordinance requiring only foundation-ready homes be given the same treatment as site-built homes and relegating prefabricated homes with hitches, wheels, and/or axles to PUD R-3 and PUD R-4 is permissible. As the district court said,

> Iowa has never protected housing that comes with a permanent hitch and axles. To the extent mobile homes come with permanent hitches and axles, they have never been a protected form of housing in Iowa and were, in fact, specifically excluded from protected status.

We affirm the district court's judgment.

## IV.    Conclusion

Section 414.28A requires land-leased communities that are composed of manufactured homes be treated equally to similar communities composed of site-built housing. Manufactured homes means foundation-ready prefabricated homes. The statute does not apply to mobile homes—the kind of housing with hitches, wheels, and/or axles. Thus, Asbury may limit mobile home parks to high density PUD zoning districts.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.